JOHN CROSBY BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49141.   Promulgated November 29, 1932.

*John W. Fisher, Esq.*, for the petitioner.
*J. D. Kiley, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: Section 214 (a) (5) of the Revenue Act of 1926 provides that in computing net income there shall be allowed as deductions losses sustained during the taxable year and not compensated for by insurance, or otherwise, if incurred in any transaction entered into for profit, though not connected with the taxpayer's trade or business.

The petitioner contends that the loss of his investment in the stock of the Hurley Playing Card Company was sustained in 1927, when the transfer of that corporation's plant, equipment and other assets to the King Press Inc. was made by the receiver. Respondent disallowed the deduction for the year 1927.

The facts disclose that the petitioner and some of his fellow stockholders of the Hurley Playing Card Company, suspecting mismanagement of the company, proceeded in August, 1926, to investigate its affairs and that as a result of the investigation the stockholders and directors of the company held meetings on November 1, 1926, at which the president was ousted from office. It was charged by the petitioner at the hearing that the president of the company had made unauthorized payments of the company's funds and had altered its books of account. It appears that on November 1, 1926, the company had insufficient cash on hand to meet pressing liabilities and was threatened with serious injury by default in the payment of insurance premiums and inability to meet payments on some of its machinery which had been purchased under conditional-sale contracts. A custodial receiver was, therefore, appointed on that day by the Chancery Court of New Jersey. Shortly thereafter a statutory receiver was appointed, the order of appointment stating, among other things, that the court was satisfied from the proof that the Hurley Playing Card Company had suspended ordinary business operations and would not be able to resume business in a short time with safety to the public or its stockholders.

In the month of November, 1926, the petitioner wrote the letters referred to in the findings of fact. These letters furnish evidence contemporaneous with the appointment of the receiver of the conclusions to which the petitioner's investigation of the company had brought him and the other investigating stockholders. These letters, written in 1926, certainly imply that from facts within the knowledge of the petitioner and the other investigating stockholders the petitioner considered that he and they had lost their investment in the stock of the company and that there was nothing in the company worth saving. Although, in accordance with the terms of the statute, it is not the time of the ascertainment, but the actual sustaining of the loss which is controlling (*Leigh Carroll*, 20 B. T. A. 1029; *Jessie*

*S. Meachem,* 22 B. T. A. 1091), nevertheless, the fact that the petitioner concluded in 1926 he had lost his investment and there was nothing in the company to save argues persuasively against petitioner's present contention that the stock of the company did not become worthless until 1927. A study of the financial condition of the company leads to a similar conclusion.

The petitioner contends that the assets of the company were fairly valued in its balance sheet stating the financial condition of the company as of October 21, 1926, the day before the custodial receiver was appointed, and that this balance sheet shows that the company was solvent at that time. In our opinion the evidence is to the contrary. In the balance sheet the patents used by the company are valued in the sum of $1,016,489, although the Hurley Playing Card Company did not own them and the company's right to use them was absolutely contingent on the continuance of the patentee, Hurley, in the employment of the company. When the statutory receiver was appointed in November, 1926, the continuance of the employment of Hurley, the patentee, by the company was entirely problematical. Equally uncertain was his future employment in the event of the reorganization and refinancing of the company. The record contains no evidence as to the real value of these rights, if any such existed.

The land, plant and equipment of the company were valued in the balance sheet in the sum of $272,756.79. However, when the receiver offered the entire plant for sale in December, 1926, he received a bid of $150,000 for the factory, plant and equipment, with options to purchase adjoining property and with the right, title and interest of the receiver and of the corporation in the patents and patent rights. A separate bid of $46,000 was made by another party for the factory premises free and clear of all encumbrances. No appraisal or other persuasive testimony of the real value of these or any of the other assets was produced. It follows that the petitioner, on whom rested the burden of proof, has not proved the value of the assets at the time the receiver took charge.

The petitioner contends there was no certainty at any time in 1926 that the company would not be reorganized and that the possibility of reorganization continued until April, 1927, when the plant, equipment and rights of the receiver were transferred to the King Press Inc. The petitioner, therefore, argues that it can not be said that the stock of the Hurley Playing Card Company became worthless until after the possibility of reorganization had terminated. Though there is some evidence that the petitioner and other stockholders talked with each other about possible reorganization of the company, the record discloses that no actual or tentative plan of refinancing or reorganizing the company was adopted by the parties in interest

either in 1926 or at any other time. Nor would it follow that a reorganization, if carried out, would establish petitioner's contention that the stock of the old company was not worthless in 1926. A contrary inference would be more reasonable.

Though the receivership continued until September, 1931, it is well settled that the loss of the investment in the stock of a corporation should be deducted in the year in which the stock becomes worthless, without waiting until the corporation has been wholly liquidated through a receivership or otherwise. *Remington Typewriter Co.*, 4 B. T. A. 880; *J. J. Melich*, 6 B. T. A. 70; *Floyd E. Poston et al., Administrators*, 17 B. T. A. 921.

Upon consideration of all the evidence, we hold that the petitioner has not proven that respondent erred in his determination that the petitioner's investment in the stock of the Hurley Playing Card Company became worthless in the year 1926.

Reviewed by the Board.

*Decision will be entered for the respondent.*

LANSDON dissents.